**Jon C. WILANDER, Plaintiff–Appellee, Cross–Appellant,**

v.

**McDERMOTT INTERNATIONAL, INC., Defendant–Appellant, Cross–Appellee.**

No. 88–4678.

United States Court of Appeals, Fifth Circuit.

Oct. 30, 1989.

Rehearing and Rehearing En Banc Denied Jan. 5, 1990.

James B. Doyle, Edmund E. Woodley, Woodley, Williams, Fenet, Palmer, Doyle & Norman, Lake Charles, La., for defendant-appellant cross-appellee.

J.B. Jones, Jr., Jennifer J. Bercier, Jones, Jones & Alexander, Cameron, La., for plaintiff-appellee cross-appellant.

Before GEE, GARZA and JONES, Circuit Judges.

GEE, Circuit Judge:

The plaintiff in this action was employed by the defendant, McDermott International, Inc., as a "paint foreman" working in the Middle East. The plaintiff was injured when a plug exploded from a pressurized pipe on board a fixed offshore platform on which he was working.

The plaintiff filed suit against the defendant in the Federal District Court for the Western District of Louisiana, alleging that he was a seaman within the coverage of the Jones Act and seeking punitive damages. The defendant filed a motion for summary judgment on the issue of the plaintiff's status as a seaman and on his entitlement to punitive damages. The plaintiff filed a motion in opposition to the defendant's motion and filed two supporting affidavits. In the second affidavit the plaintiff stated that during his employment with the defendant he spent approximately 70% of his working time aboard some vessel. The district court denied the defendant's motion for summary judgment on the issue of the plaintiff's status as a sea-man, but granted the motion on the issue of punitive damages. The district court then determined that the seaman's status issue would be tried to the jury first, followed by a later trial on liability and damages if necessary.

Following the first part of the trial the jury found that the plaintiff had status as a seaman because he was substantially connected to 1) the DB–9, a Panamanian vessel owned by the defendant; 2) the GATES TIDE, an American vessel chartered to the defendant; 3) the fixed platform upon which he was injured, and 4) a group of vessels called the "TIDEX" fleet. The jury further found that the plaintiff contributed to the function of the DB–9 and the GATES TIDE. The defendant moved for judgment n.o.v., and the court denied this motion. The case proceeded to trial before the same jury on the issues of liability and damages. The jury awarded the plaintiff $450,000, including $400,000 for lost past and future earnings. This amount was reduced by 25% for the plaintiff's contributory negligence. The defendant appealed this judgment, and the plaintiff cross-appealed.

The defendant contends that the district court should have granted the defendant's motion for summary judgment on the issue of the plaintiff's status as a seaman rather than submitting that issue to the jury. In *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1073 (5th Cir.1986 en banc) we held that a worker qualifies for seaman status under the Jones Act if "the employee ... [is] assigned permanently to a vessel or perform[s] a substantial part of his work on the vessel."

We have stated "that the status determination ... [is], like any other factual determination, generally to be entrusted to the jury:

[The terms "seaman," "vessel," and "member of a crew"] have such a wide range of meaning under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed,

the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts.

*Id.* at 1072–1073 (citations omitted). "Our cases also make it clear ... [however] that status may be determined by summary judgment in the appropriate situation. Thus ... 'where the facts establish *beyond question as a matter of law* [the lack of seaman status] ... a court ... may, in the proper case, hold that there is no reasonable evidentiary basis to support a jury's finding that the injured person is a seaman ... under the Jones Act.'" *Id.* at 1074 (emphasis in original) [citations omitted].

In *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir.1959) we held:

[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

*Id.* at 779.

In adopting the second prong of this test, we rejected a stricter proposed test, one which would have limited seaman status to those persons on board a vessel who aid in navigation. *Id.* at 780. Thus, under the *Robison* test, the plaintiff qualifies for seaman status if he is permanently assigned to a vessel *or* performed a substantial part of his work on the vessel *and* the duties he performed contributed to the function of the vessel.

■ In this case the evidence established that the plaintiff performed a substantial part of his work, directing the sandblasting and painting of fixed platforms, from the GATES TIDE. Further, the GATES TIDE functioned as a paint boat. Consequently, the plaintiff's duties contributed to the function of the vessel. There was, therefore, sufficient evidence under the *Robison* test to support the jury's finding that the plaintiff had status as a seaman.

The defendant urges us to reject the *Robison* test and adopt the more stringent standard set forth by the Seventh Circuit in *Johnson v. John F. Beasley Construction Co.*, 742 F.2d 1054 (7th Cir.1984). In *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir.1986 en banc) we were offered a similar opportunity to reject the *Robison* test and adopt the *Johnson* test. Under the *Johnson* test, seaman status is conferred only on employees who "perform significant navigational functions or further the 'transportation function' of the vessel," and under this test it is evident that Wilander would not qualify.[1] *Barrett* at 1073. In declining to adopt this test we noted that "later Supreme Court cases require such a broad definition of 'aid to navigation' that the test proposed ... is entirely inconsistent with them." *Id.* at 1073. Two justices of the Supreme Court recognize that a conflict exists between our test and that used in the Seventh Circuit. *See Lormand v. Aries Marine Corporation, et al.*, 484 U.S. 1031, 108 S.Ct. 739, 98 L.Ed.2d 774 (1988) dissent by Justice White, denial of certiorari. The Supreme Court has not, however, held that our Circuit's test is incorrect and that of the Sev-

---

1. We note in this connection plaintiff's sworn statement that he aided in the navigation of the vessel and on occasion actually steered or drove the vessel as well as assisted in mooring it. We do not find this statement relevant to whether the plaintiff's duties contributed to the function of the vessel. The plaintiff's duties were to supervise painting and sandblasting of off-shore platforms. The fact that he may, on occasion, have gratuitiously assisted in navigation, steering or mooring the vessel does not make these activities a part of his duties. In determining a plaintiff's entitlement to seaman status we consider only those duties which his employer expected him to perform, not those that he chooses to perform for his own edification or amusement or out of the goodness of his heart.

enth Circuit correct. Absent such a holding by the Supreme Court, we must adhere to our en banc decision in *Barrett,* which reaffirmed the validity of the *Robison* test. Under that test there was sufficient evidence to support the jury's finding that the plaintiff had status as a seaman.

■ Finally, we turn to the plaintiff's contention that the jury finding that he was contributorily negligent is supported by insufficient evidence because "the only basis in the evidence for the jury's finding of fault on the part of ... [the plaintiff] was the first statement of ... the Indian crewmen who supposedly witnessed the accident." The plaintiff objected to the admission of this statement, apparently taken by the barge captain on his own initiative, on the ground that it was hearsay which fell within no exception to the hearsay rule. The court admitted the statement under Federal Rules of Evidence 803(6) and 803(24)."

These rules provide:

### Rule 803. Hearsay Exceptions; Availability Of

### Declarant Immaterial.

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(6) Records Of Regularly Conducted Activity.

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or date compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

. . . .

(24) Other Exceptions.

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

In order to be admissible under (6), the business records exception, the statement must meet the following foundational elements:

(a) That the document have been made 'at or near' the time of the matters recorded therein; (b) that the document have been prepared by, or from information transmitted by a person 'with knowledge of the matters recorded'; (c) that the person or persons who prepared the document have been engaged in preparing it, in some undertaking, enterprise or business which can fairly be termed a 'regularly conducted business activity'; (d) that it have been the 'regular practice' of that business activity to make documents of that nature; and (e) that the documents have been retained and kept in the course of that or some other regularly conducted business activity.

*White Industries v. Cessna Aircraft,* 611 F.Supp. 1049 (D.C.Mo.1985).

In this case there was no showing that the document was kept in the course of some regularly conducted business activity or that it was the regular practice of the business to make such reports. The statement should not, therefore, have been admitted under subsection (6).

■ The "last-resort" subsection, number (24), permits the introduction of hearsay statements not admissible under any other if they are trustworthy and if the proponent of the statement informs the adverse party, in advance of trial, that he intends to use them. In this case, two factors made the statement untrustworthy. First, it appears that the statement was prepared in anticipation of litigation. Second, the witness later contradicted his statement. Further, the plaintiff was not given advance notice of the defendant's intent to use the statement. Neither, therefore, should the statement have been admitted under subsection (24).

■ Contrary to the plaintiff's assertion, however, there was other evidence to support the jury's finding that the plaintiff was contributorily negligent. The difficulty is that the improperly admitted statement, allegedly made by the only witness to the accident, cannot have failed to have had a substantial impact on the jury. It is impossible to determine whether, absent that statement, the jury would have found the plaintiff contributorily negligent or to what extent. It is apparent that this issue, and the evidence pro and con upon it, is inextricably interwoven with the issue of primary negligence and with damages, so that if this is to be retried, so should they. We therefore AFFIRM the judgment insofar as it determines that Mr. Wilander was entitled to seaman status when injured, REVERSE as to its other determinations, and REMAND for further proceedings consistent herewith. It is so

ORDERED.