**Joe Frank REECER, and his wife, Mable Reecer**

v.

**McKINNON BRIDGE COMPANY and Ingersoll–Rand Rock Drill Division.**

No. 3–89–0205.

United States District Court, M.D. Tennessee, Nashville Division.

July 31, 1990.

Arnold Goldin, Memphis, Tenn., for plaintiffs.

G. Ray Bratton, Memphis, Tenn., Jack B. Draper, Arnett Draper & Hagood, Knoxville, Tenn., and Yerrid, Knopik & Valenzuela, Tampa, Fla., for defendants.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Pending before the Court are the plaintiff's and the defendants' motions for summary judgment.

## FACTS

The plaintiff, Joe Frank Reecer, was hired by the defendant McKinnon Bridge Company, Inc. on July 8, 1988 as a construction worker. The plaintiff continued to work for the defendant until the plaintiff was injured on October 5, 1988. The defendant was involved in a road construction project which included the construction of a bridge across the Cumberland River at Carthage, Tennessee. The plaintiff served as a carpenter, general laborer and drill operator while assisting with the construction of the land portion of the bridge until work was completed on the first bridge pier. The bridge was designed with three piers supporting its deck. After the completion of the first pier, the defendant began construction of the other two piers which were built in the river from barges.

As soon as work began on the second pier, sometime in early August, the plaintiff was reassigned from his land duties to operating a drill on a portable drill barge in the river. The plaintiff operated the drill on the portable drill barge until the date the plaintiff was injured on October 5, 1988 [1].

The defendant maintained approximately four barges, including the portable drill barge, and a tugboat at the construction site to assist in the construction of piers two and three. The portable drill barge on which the plaintiff worked was composed of several sections which could be joined to create barges of different sizes. The sections could be transported to the job site by various means, including by truck and by barge. In the present case, the dismantled sections were transported to Carthage, Tennessee, assembled and then loaded onto a crane barge which was pushed out into the river by towboat. The portable drill barge left the construction site in May of 1989 in tow with another barge.

During the time in which the plaintiff worked on the portable drill barge, the barge remained moored and tied to a larger crane barge. The crane barge was secured to the river bed by poles called spuds. The portable drill barge was moved up the river only twice during the drilling and that was so that the defendant could dynamite the drill holes. The portable drill barge was moved slightly while moored through the use of winches and lines. The portable drill barge was moved in this way infrequently.

During the time in which the plaintiff worked for the defendant, the portable drill barge was not used to move materials, or equipment. However, the defendant had used the portable drill barge on previous

---

1. There was a period of one week when river conditions precluded the plaintiff from working on the portable drill barge.

job sites to transport materials from the bank to the middle of the river. The defendant had also used the portable drill barge in the past to support and transport a crane.

No structure or equipment was permanently affixed to the portable drill barge or its deck. The portable drill barge did not have kitchen or sleeping facilities.

The portable drill barge was designed with a rake piece that is attached to form a raked bow, or front. The portable drill barge was also outfitted with kevels, that are used to tie the barge to other barges in tow, and temporary navigational lights.

The plaintiff worked approximately ten to fourteen hours a day on the portable drill barge. He ate lunch on the portable drill barge.

## DISCUSSION

### I. The Standards for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained the District Court's function in ruling upon a motion for summary judgment:

> By its very terms, [the Rule 56(c) ] standard provides that the mere existence of *some* alleged actual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted....
>
> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. 477 U.S. at 247–48, 106 S.Ct. at 2510. (citations omitted).

It is likewise true that "[i]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. [citations omitted] It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute.' " *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962). As the Sixth Circuit Court of Appeals stated:

> Summary judgment may only be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. All facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion. *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.) *cert. denied,* 444 U.S. 986 [100 S.Ct. 495, 62 L.Ed.2d 415] (1979).

*Duchon v. Cajon Co.,* 791 F.2d 43 (6th Cir.1986). Under these holdings, three questions are to be considered upon a motion for summary judgment: (1) does the plaintiff present sufficient facts to establish all the elements of his claim; (2) are those facts sufficient to support a jury verdict or judgment; and (3) are there any material factual issues with respect to those facts.

### II. The Plaintiff's Jones Act Claim and the Motions for Summary Judgment

The plaintiff is attempting to recover damages for his injuries from the defen-

dants under the Jones Act, 46 U.S.C.App. § 688, which allows seamen to invoke federal admiralty jurisdiction against their employers for adjudication of their injury claims. The Jones Act provides in pertinent part:

> Any seaman who shall suffer personal injury in the course of his employment, may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply ...

46 U.S.C.App. § 688.

The sole issue which must be resolved in ruling on the parties' motions for partial summary judgment on the plaintiff's Jones Act claim is whether the plaintiff is a "seaman."

**A. Seaman Status**

■ The Jones Act does not define what type of worker is to be considered a "seaman," thus, the courts have had to determine who has standing to bring an action under the Act. In 1953, the Sixth Circuit Court of Appeals, in *Wilkes v. Mississippi River, Sand & Gravel Co.*, 202 F.2d 383 (6th Cir.1953), enunciated a three-pronged test for determining seaman status within the meaning of the Jones Act. The test is as follows:

1. That the vessel be in navigation;
2. that there be more or less permanent connection with the vessel; and
3. that the worker be aboard primarily to aid in navigation.

202 F.2d at 388. *See also, Petersen v. Chesapeake & Ohio Railroad Co.*, 784 F.2d 732, 737 (6th Cir.1986); *Searcy v. E.T. Slider, Inc.*, 679 F.2d 614, 616 (6th Cir. 1982); and *Luckett v. Continental Engineering Co.*, 649 F.2d 441, 442 (6th Cir. 1981).

The Sixth Circuit has indicated that in determining whether these requirements have been satisfied that the three elements necessary to constitute a seaman should be liberally construed. *Searcy v. E.T. Slider, Inc.*, 679 F.2d 614, 617 (6th Cir.1982) ("Lib-

eral construction of the elements of a seaman is not limited to the question of whether one is on board a vessel in aid of navigation.").

The Supreme Court, in *Senko v. La Crosse Dredging Corp.*, 352 U.S. 370, 374, 77 S.Ct. 415, 417, 1 L.Ed.2d 404, rehearing denied 353 U.S. 931, 77 S.Ct. 716, 1 L.Ed.2d 724 (1957), its last decision addressing the question of seaman status, relegated the question of seamen status to the jury (or finder of fact) in most cases:

> We believe ... that our decision in ... [*South Chicago Coal & Dock Co. v.*] *Bassett* [309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940)] ... has not been fully understood. Our holding there that the determination of whether an injured person was a 'member of a crew' is to be left to the finder of fact meant that juries have the same discretion they have in finding negligence or any other fact. The essence of this discretion is that a jury's decision is final if it has a reasonable basis, whether or not the appellate court agrees with the jury's estimate.

Similarly, the Fifth Circuit Court of Appeals has consistently held that the question of whether a worker is a seaman should be decided by the trier of fact. In *Bernard v. Binnings Construction Co., Inc.*, 741 F.2d 824, 827 (5th Cir.1984) the Fifth Circuit held that the issue of seaman status "should only be removed from the trier of fact (by summary judgment or directed verdict) in rare circumstances ... and [that] even marginal Jones Act claims should be submitted to the jury." *See also, Daniel v. Ergon, Inc.*, 892 F.2d 403 (5th Cir.1990); 1B, Benedict on Admiralty § 11a (7th ed. 1989).

Following along the lines of the Supreme Court's decision in *Senko* and the decisions of the Fifth Circuit Court of Appeals, the Sixth Circuit has consistently held that the question of a plaintiff's status as a Jones Act seaman is ordinarily a question of fact to be determined by the jury, *Petersen v. Chesapeake & Ohio Railroad Co.*, 784 F.2d 732, 737 (6th Cir.1986); *Searcy v. E.T. Slider, Inc.*, 679 F.2d 614, 616 (6th Cir. 1982); *Luckett v. Continental Engineer-*

*ing Co.*, 649 F.2d 441, 443 (6th Cir.1981), and that a district court may determine seaman status, as a matter of law, only where there is no reasonable evidentiary basis to support a jury finding that the plaintiff is a seaman. *Petersen v. Chesapeake & Ohio Railroad Co.*, 784 F.2d 732, 737 (6th Cir.1986).

Upon an analysis of the three-pronged *Wilkes* test, the Court finds that there are genuine issues of material fact concerning whether the plaintiff was a seaman at the time he was injured. Thus, both the plaintiffs' and the defendants' motions for summary judgment must be denied.

### 1. The Vessel Must be in Navigation

■ A worker claiming seaman status under the Jones Act must first establish that he was employed upon a "vessel in navigation." The structure does not, however, have to be in navigation at the precise moment that the injury to the alleged seaman occurred. 1B, Benedict on Admiralty § 11a (7th ed. 1989). Indeed, the Sixth Circuit Court of Appeals has held that "if a vessel 'is engaged as an instrument of transportation or commerce on navigable waters, that vessel is "in navigation" although moored to a pier, in a repair yard for periodic repairs or while temporarily attached to some object.'" *Petersen v. Chesapeake & Ohio Railroad Co.*, 784 F.2d 732, 738 (6th Cir.1986) quoting *Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31, 37 (3d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

The traditional notion of a type of craft considered to be a vessel [2] in navigation is a structure which carries cargo or passengers across water. *Bernard v. Binnings Construction co., Inc.*, 741 F.2d 824 (5th Cir.1984); *Cook v. Belden Concrete Prod-*

*ucts, Inc.*, 472 F.2d 999 (5th Cir.), cert. denied, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973); 1B, Benedict on Admiralty § 11a (7th ed. 1989). However, the relatively recent advent of special purpose floating structures, such as barges, floating cranes, dredges, and construction platforms, has introduced uncertainty as to what structures within the term "vessel" encompasses. 1B, Benedict on Admiralty § 11a (7th ed. 1989). While these structures do not perform functions normally associated with conventional vessels, they do subject those individuals who work thereon to the same hazards of sea as do traditional vessels.

■ The primary gauge for determining if a structure is a vessel in navigation is the purposes for which the craft was constructed and the type of business in which it was engaged. *Bernard v. Binnings Construction Co., Inc.*, 741 F.2d 824 (5th Cir.1984); *Colomb v. Texaco, Inc.*, 736 F.2d 218, 221 (5th Cir.1984); 1B, Benedict on Admiralty § 11a (7th ed. 1989). If a structure was designed or used primarily to provide a work platform—like a dry dock—then the structure is not a vessel even if afloat.[3] *Ducrepont v. Baton Rouge Marine Enterprises, Inc.*, 877 F.2d 393 (5th Cir.1989); *Bernard v. Binnings Construction Co., Inc.*, 741 F.2d 824 (5th Cir.1984).

■ The defendants argue that the plaintiffs' motion for summary judgment should be denied because the portable drilling barge upon which the plaintiff was working at the time he was injured was not a "vessel in navigation," but rather was a work platform. The defendants cite the following "facts" to support their contention:

**2.** Congress has defined the term "vessel" broadly:
> The term "vessel" includes all water craft and other artificial contrivances of whatever description and at whatever stage of construction, whether on the stocks or launched, which are intended or are capable of being or are intended to be used as a means of transportation on water. Section 1 of the Shipping Act of 1916, 46 U.S.C.App. § 801.

**3.** The Court notes, however, that a structure whose purpose or primary business is not navigation or commerce across navigable waters may nonetheless satisfy the Jones Act's vessel requirement if, at the time of the worker's injury, the structure was actually engaged in navigation. *Bernard v. Binnings Construction Co.*, 741 F.2d 824 (5th Cir.1984).

1. the barge was constructed and used exclusively as a work platform;
2. the barge did not transport materials or equipment across navigable waters;
3. the barge had no motive power of its own and had to be pushed by tow boat in order to move across navigable waters;
4. the barge had no living quarters, kitchen facilities, bilge pumps, or other accoutrement that would indicate that the barge was intended to be employed as a vessel in navigation;
5. the barge was moored at the time of the accident; and
6. during the four month tenure of the plaintiff's employment the barge was only moved twice.

The plaintiffs argue that the defendants motion for summary judgment should be denied because the portable drilling barge that the plaintiff was working on at the time he was injured was not a work platform, but rather was a "vessel in navigation." The plaintiff cites the following "facts" to support his contention:

1. the barge was designed for and capable of transportation on inland waterways as evidenced by the facts that the barge is:
   a. designed with a rake piece that is attached to form a raked bow that is slanted to enable it to navigate through water; and
   b. equipped with kevels that are used to tie the barge to other barges in tow for water transportation;
2. during the plaintiff's employment the barge was used to deliver the drill which the plaintiff operated to various points in the river;
3. at times other than when the plaintiff was employed the barge was used to deliver materials; and
4. that the barge has been used to transport a crane.

In ruling on the motions for summary judgment the Court must look at all facts and inferences drawn from the pleadings, depositions, answers to interrogatories, admissions and affidavits in the light most favorable to the non-moving party. An analysis of the facts in this way demonstrates that there are genuine issues of material fact concerning whether the portable drilling barge was merely a work platform or whether it was a "vessel in navigation."

**B. The Worker Must be in More or Less Permanent Connection with the Vessel**

The second element a worker claiming seaman status under the Jones Act must establish is that she have a more or less permanent[4] connection with the vessel. The "permanence" test is merely meant to separate individuals whose duties do not generally bring them into contact with the water from those individuals whose duties are such that they are typically exposed to the hazards of sea. As Benedict on Admiralty states: "[t]his requirement is designed to deny coverage to a person whose work on the ship is transitory or whose injury occurred on the vessel merely because of a fortuitous set of circumstances." 1B Benedict on Admiralty, § 11a (1989). *See also*, T. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, 177 (1987); *Porche v. Gulf Mississippi Marine Corp.*, 390 F.Supp. 624 (E.D.La.1975) ("The requirement of a relatively permanent tie to the vessel is meant to deny seaman's status to those who come aboard a vessel for an isolated piece of work, not to deprive a person whose duties are truly navigational of Jones Act rights merely because he serves aboard a vessel for only a relatively short period of time.")

The "permanence" test can be satisfied in one of two alternative ways: (1) the claimant can establish that she was permanently assigned to a vessel or a group of vessels; or (2) the claimant can establish that she performed a substantial part of her work on the vessel with at least some degree of regularity and continuity.

---

**4.** The word "permanent" has not been given a literal application by the courts interpreting the Jones Act. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314 (5th Cir.1977). The permanency criterion should be treated as an "analytical starting point" rather than a "self-executing formula" given "wooden application." *Brown v. ITT Rayonier, Inc.*, 497 F.2d 234 (5th Cir.1974).

492

■ Although the distinction between these two alternate paths is somewhat illusory, as they tend to blur together, T. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 177 (1987), many of the cases revolve around the second path because permanent assignment cannot be shown. Similarly, in the present case, the plaintiff appears to concede that he can not satisfy the "permanence" test through the first alternative, thus the plaintiff must meet the second alternative.

Therefore, the Court must examine the claimant's duties in the context of his entire employment with the employer for whom he worked at the time of the accident and determine whether a substantial portion of those duties were required to be performed on a vessel. *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067 (5th Cir. 1986).

The courts have never quantified how much work must be done on board a vessel to equal a "substantial portion" of one's work.

In *Leonard v. Dixie Well Service,* 828 F.2d 291 (5th Cir.1987) the Fifth Circuit set aside a summary judgment denial of seaman status in light of the claimant's sworn testimony that 70% of his work was vessel based. Several other cases suggest that workers who spent as little as 32% and 51% of their employment working aboard vessels met the "substantial portion" test, *Langston v. Schlumberger Offshore Services,* 809 F.2d 1192 (5th Cir.1987); *In re: Patton–Tully Transport Co.,* 797 F.2d 206 (5th Cir.1986). *But see, Barrett v. Chevron U.S.A., Inc.,* 781 F.2d 1067 (5th Cir. 1986) (suggesting that the performance of 20–30% of one's duties aboard a vessel is not enough); *Ketnor v. Automatic Power, Inc.,* 684 F.Supp. 907 (E.D.La.1987) (suggesting that the performance of 25% of one's duties aboard a vessel is not enough); *Davis v. Hill Engineering, Inc.,* 549 F.2d 314 (5th Cir.1977) (suggesting that the performance of 15% of one's duties aboard a vessel is not enough).

In the present case the plaintiff was employed by the defendant for approximately three and one half months before the plaintiff was injured. While the plaintiff spent one month of his employment working on land, the plaintiff spent two and one half months working on an alleged vessel. Therefore, approximately 70% of the plaintiff's employment with the defendant consisted of work on water.[5]

Based upon the facts of this case, the Court finds that the expenditure of 70% of the plaintiff's time of employment on board an alleged vessel indicates that the plaintiff not only spent a "substantial portion" of his time performing duties on a vessel, but also indicates that the plaintiff served on the vessel with at least some degree of regularity and continuity.

C. The Worker Must be Aboard Primarily to Aid in Navigation

■ The third prong of the *Wilkes* test requires that the worker seeking seaman status under the Jones Act must be aboard the vessel primarily to aid in navigation. This requirement is not applied literally. Indeed, this requirement has been watered down by the courts "until the words have lost their natural meaning." *Offshore Company v. Robison,* 266 F.2d 769, 778 (5th Cir.1959). *See e.g.,* 1B, Benedict on Admiralty § 11a (7th ed. 1989).

In *Offshore,* the Fifth Circuit stated:
There is no reason for lamentations. Expansion of the terms "seaman" and "vessel" are consistent with the liberal construction of the Act that has characterized it from the beginning and is consistent with its purposes. Within broad limits of what is reasonable, Congress has seen fit to allow juries to decide who are seaman under the Jones Act. There is nothing to indicate that Congress intended in the act to indicate that Congress intended the law to apply only to conventional members of a ship's company. The absence of any legislative restriction has enabled the law to develop naturally along with the development of unconven-

5. While not conceding the plaintiff's allegation that the plaintiff spent 70% of his employment with the defendant on the water, neither does the defendant deny the plaintiff's allegation.

tional vessels, such as the strange-looking specialized watercraft designed for oil operations off shore and in the shallow coastal waters of the Gulf of Mexico. Many of the Jones Act seamen on these vessels share the same marine risks to which all aboard are subject. And in many instances Jones Act seamen are exposed to more hazards than are bluewater sailors.

266 F.2d at 780.

The Fifth Circuit reiterated this point in *Holland v. Allied Structural Steel Co.:*

[i]n recent years the traditional notions of both 'crew' and 'vessel' have been expanded and Jones Act coverage extended to individuals not formally assigned to maritime crews or conventional water-borne vessels.

539 F.2d 476, 479 (5th Cir.1977), rehearing denied, 542 F.2d 1173, cert. denied, 429 U.S. 1105, 97 S.Ct. 1136, 51 L.Ed.2d 557 (1977).

Thus, many courts have found that the "aiding in navigation" requirement has been satisfied "where the employee's duties merely contributed to the function and operation of the vessel, or the accomplishment of its mission." 1B, Benedict on Admiralty § 11a (7th ed. 1989); *Brown v. ITT Rayonier Inc.,* 497 F.2d 234 (5th Cir. 1974). Other courts have found the "aiding in navigation" requirement fulfilled where the worker's duties were "limited to aiding in the operation or welfare of the vessel in terms of maintenance during its movement or during its anchorage for return trips. 1B, Benedict on Admiralty § 11a (7th ed. 1989); *Mietla v. Warner Co.,* 387 F.Supp. 937 (E.D.Pa.1975).

The defendants, however, argue that a strict reading of "aiding in navigation" is required. The defendants contend that this Court should follow the Seventh and Third Circuits which have put real teeth into the "aiding in navigation" requirement.

*Johnson v. John F. Beasley Construction Co.,* 742 F.2d 1054 (7th Cir.1984), is cited as an example of how the Seventh Circuit interprets the "aiding in navigation" requirement.

In *Johnson* the Seventh Circuit Court of Appeals affirmed the district court's grant-

ing of summary judgment on the issue of whether a construction worker was a seaman under the Jones Act. The construction worker was a foreman responsible for overseeing the removal of the wing span portion of a railroad bridge. The construction worker was working with a lifting crane which had been installed on a steel deck floating work platform.

In affirming the district court's dismissal, the Seventh Circuit held:

The only evidence suggesting that [the worker] contributed to the transportation function of the [vessel] was the statement that he may have thrown or fastened some mooring lines. We think that this task was insignificant with respect to the operation and welfare of the transportation and function of the [vessel].

742 F.2d at 1064.

The Seventh Circuit explained that the "aiding in navigation" requirement was a vital and substantive device necessary for determining Jones Act eligibility and that is should not be treated as a mere formality:

While the liberal attitude of the courts in finding employees of questionable status "seamen" may be commendable when the employee's duties fall into gray ares, we believe the purpose of the Jones Act is distorted when persons who are obviously not seamen recover damages at the shipowner's expense. If the Jones Act is to retain any limitations on its coverage, we believe the employee's duties with respect to the transportation function of the vessel should define them.

742 F.2d at 1062.

The Sixth Circuit Court of Appeals, however, has not adopted such a rigid interpretation of "in aid of navigation." In *Wilkes v. Mississippi River, Sand & Gravel Co.,* 202 F.2d 383 (6th Cir.1953), the court stated:

A review of the cases supports our conclusion that 'aiding in navigation' is not confined to those who can 'hand, reef and steer,' but applies to all whose duties

contribute to the operation and welfare of the vessel.

202 F.2d at 388.

Similarly, the Fifth Circuit Court of Appeals, in *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir.1959)[6], has adopted a more expansive definition of "aiding in navigation" than is suggested by its literal reading. In *Offshore*, the Fifth Circuit explained that the "in aid of navigation" requirement is satisfied "if the capacity in which [the worker] was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips." *Id.* at 779.

The Fifth Circuit affirmed *Offshore* in *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067 (5th Cir.1986)[7] and more recently in *Wilander v. McDermott International Inc.*, 887 F.2d 88 (5th Cir.1989). In *Barrett* the Fifth Circuit specifically held:

> Some of our amici suggest that *Robison* erred in eliminating the "aid-to-navigation" requirement which appears in the early Supreme Court cases. Others suggest the second prong of the *Robison* test should be reformed to grant crew member status only to those workers who perform significant navigational functions or further the "transportation function" of the vessel. This is essentially the approach adopted by the Seventh Circuit in *Johnson v. John F. Beasley Construction Co.*, 742 F.2d 1054 (7th Cir.1984).

We cannot accept either of these suggestions ... 781 F.2d at 1067.

Then in *Wilander v. McDermott International Inc.* the Fifth Circuit stated:

> [U]nder the the *Robison* test, the plaintiff qualifies for seaman status if he is permanently assigned to a vessel *or* performed a substantial part of his work on the vessel *and* the duties he performed contributed to the function of the vessel.

In this case the evidence established that the plaintiff performed a substantial part of his work, directing the sandblasting and painting of fixed platforms, from the GATES TIDE. Further, the GATES TIDE functioned as a paint boat. Consequently, the plaintiff's duties contributed to the function of the vessel. There was, therefore, sufficient evidence under the *Robison* test to support the jury's finding that the plaintiff had status as a seaman.

The defendant urges us to reject the *Robison* test and adopt the more stringent standard set forth by the Seventh Circuit in *Johnson v. John F. Beasley Construction Co.*, 742 F.2d 1054 (7th Cir.1984) ... [W]e must adhere to our en banc decision in *Barrett*, which reaffirmed the validity of the *Robison* test. 887 F.2d at 91.

In *Searcy v. E.T. Slider, Inc.*, 679 F.2d 614, 616 (6th Cir.1982), the Sixth Circuit indicated that the Fifth Circuit's standard for determining seaman status is virtually identical to the Sixth Circuit's own test as enunciated in *Wilkes*. Thus, the Fifth Circuit's interpretation of the "aiding in navigation" requirement is of some precedental significance to this Court's application of the "in aid of navigation" requirement.

This Court is in agreement with the two district courts within the Western District of Tennessee which have rejected the nar-

---

**6.** The defendants argue that *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir.1959), and its progeny, cited by the plaintiff for the proposition that if a worker's duties merely contributed to the accomplishment of the vessels mission, then the worker satisfies the "in aid of navigation" prong of the *Wilkes* test, have been thrown into doubt by the Fifth Circuits *en banc* rehearing of *Legros v. Panther Services Group, Inc.*, 863 F.2d 345 (5th Cir.1988), in which the Fifth Circuit is specifically reexamining the "in aid of navigation" question. The Court notes, however, that subsequent to the Fifth Circuit's granting a rehearing *en banc* of *Legros* that the matter was settled and the appeal withdrawn and dismissed.

**7.** The Court notes that in a concurring opinion, four of the judges of the Fifth Circuit specifically stated that they favored the approach of the Seventh Circuit as enunciated in *Johnson v. John F. Beasley Construction Co.*, 742 F.2d 1054 (7th Cir, 1984).

row interpretation of "in aid of navigation" and in favor of the Fifth Circuit's more expansive definition of "in aid of navigation" as enunciated in *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir.1959), and later re-affirmed by *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067 (5th Cir.1986). *William Alessi, et. ux. v. Patton–Tully Transportation Co.*, No. 86–2104–MA (W.D.Tenn.1987); *Hutcherson v. Mckinnon Bridge Co.*, No. 85–1182, 1987 WL 65061 (W.D.Tenn.1987). *But c.f., Brown v. McKinnon Bridge Co.*, 732 F.Supp. 1479 (E.D.Tenn.1989).

In *William Alessi, et. ux. v. Patton–Tully Transportation Co.*, No. 86–2104–MA (W.D.Tenn.1987), Chief Judge Robert M. McRae, Jr., in determining how the "aid in navigation" requirement should be interpreted, stated that it should be construed consistently with the broad test set forth in *Offshore*. Chief Judge McRae determined that because the vessel was used primarily to enable workmen to perform piling jobs and because the alleged seaman performed welding operations related to the piling jobs that the "aid in navigation" test was fulfilled.

Similarly, in *Hutcherson v. Mckinnon Bridge Co.*, No. 85–1182 (W.D.Tenn.1987), Judge James D. Todd, adopted the Fifth Circuit's interpretation of the "in aid in navigation" requirement as enunciated in *Offshore*. Thus, the court concluded that the "aid in navigation" requirement was fulfilled where the worker's duties, constructing forms into which concrete was poured and operating the concrete hopper, contributed to the accomplishment of the vessel's mission, constructing a bridge.

Thus, in order to satisfy the "in aid of navigation" requirement the alleged seaman must demonstrate that the capacity in which she was employed or the duties which she performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

In the present case the plaintiff alleges that he served as a drill operator on board the portable drilling barge and that the mission and function of the portable drilling barge was to perform drilling and blasting work in conjunction with the construction of the river bridge. The defendant does not dispute these allegations. Thus, taking the evidence in the light most favorable to the non-moving party, the Court finds that the plaintiff contributed to the accomplishment of the vessel's mission and thus satisfied the third prong of the *Wilkes* three pronged test.

Because genuine issues of material fact exist as to the satisfaction of the first prong of the three prong test enunciated in *Wilkes*, the Court hereby DENIES the plaintiff's motion for summary judgment and the Court DENIES the defendants' motion for summary judgment.

### III. *The Plaintiff's Claim of Federal Maritime Jurisdiction*

Federal admiralty jurisdiction stems from Article III, Section 2 of the United State's Constitution, which extends "to all Cases of admiralty and maritime Jurisdiction." Congress implemented this jurisdictional grant in what is now codified at 28 U.S.C. § 1331(1).

28 U.S.C. § 1331(1) provides in relevant part:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction ...

Historically, the standard for the determination of maritime tort jurisdiction was viewed solely as a question of the locality of the tort. *Kelly v. Smith*, 485 F.2d 520 (5th Cir.1973). However, in *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Supreme Court rejected the pure locality test—the place of the wrong—for determining whether a tort action was within the admiralty jurisdiction and instead set forth a two-pronged standard. The first prong requires that the wrong must occur in navigable waters and the second prong requires that the wrong must bear a "significant relationship to traditional maritime activity."

The Supreme Court rejected the pure locality test because the Court wished to remove from admiralty jurisdiction those cases that were merely incidently and fortuitously connected to navigable waters.

## A. Navigable Waters

■ The determination of the navigability of waterways is ordinarily a question of fact, and the burden of proof rests with the party invoking admiralty jurisdiction. T. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 65 (1987).

The basic test for determining the navigability of waterways, for purposes of admiralty jurisdiction, is the formula of *The Daniel Ball,* 77 U.S. (10 Wall) 557, 19 L.Ed. 999 (1871), which provided:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of acts of Congress, in contradistinction from the navigable waters of the Sates, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

77 U.S. (10 Wall) at 563.

■ In the present case the first prong of the test is satisfied because the plaintiff's injury occurred on a barge moored in the Cumberland River and the Cumberland River does serve as "highway for commerce[8]".

## B. Significant Relationship to Traditional Maritime Activity

The Fifth Circuit Court of Appeals, in *Kelly v. Smith,* 485 F.2d 520 (5th Cir.1973),

enunciated a four factor test to determine whether an alleged wrong has a significant relationship to traditional maritime activity:

1) the functions and roles of the parties;

2) the types of vehicles and instrumentalities involved;

3) the causation and the type of injury; and

4) traditional concepts of the role of admiralty law.

485 F.2d at 525. This test has also been adopted by many other circuits. *See, Shea v. Rev–Lyn Contracting Co., Inc.,* 868 F.2d 515 (1st Cir.1989); *Oman v. Johns–Manville Corp.,* 764 F.2d 224 (4th Cir. (en banc), cert. denied, 474 U.S. 970, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985); *Harville v. Johns–Manville Corp.,* 731 F.2d 775 (11th Cir. 1984); *Owens–Illinois, Inc. v. United States District Court,* 698 F.2d 967 (9th Cir.1983); *Edymak v. Atlantic Shipping Inc.,* 562 F.2d 215 (3rd Cir.1977), cert. denied, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *St. Hilaire Moy v. Henderson,* 496 F.2d 973 (8th Cir.), cert. denied, 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974).

Recently, in *Molett v. Penrod Drilling Co.,* 826 F.2d 1419, 1426 (5th Cir.1987), the Fifth Circuit promulgated three additional factors that must be considered under the rubric of "traditional concepts of the rule of admiralty law" when determining whether a significant relationship to traditional maritime activities exists. These three factors are:

1) the impact of the event on maritime shipping and commerce;

2) the desirability of a uniform national rule to apply to such matters; and

3) the need for admiralty 'expertise' in the trial and decision of the case.

868 F.2d at 518.

The defendant cites *Molett v. Penrod Drilling Co.,* 826 F.2d 1419, 1426 (5th Cir. 1987), for the proposition that the there was not a sufficient nexus between the accident and traditional maritime activity. In *Molett,* the plaintiffs were killed while

---

**8.** Further definition of the term "navigable waters" is not necessary as the defendants do not contest the plaintiff's assertion that the Cumberland river is a navigable waterway.

constructing an oil derrick on a barge. The plaintiffs were killed when a chain snapped causing a forty foot pole to fall, hitting the scaffolding upon which the plaintiff's were standing and sending them plunging 147 feet to their deaths.

The plaintiffs satisfied the first prong of the *Executive Jet* test—the locality prong—because the plaintiff were killed while working on navigable waters. However, the Fifth Circuit held that the plaintiffs failed to satisfy the second prong of the *Executive Jet* test—the significant relationship to traditional maritime activities prong.

The Fifth Circuit wrote:

> The fatal accident had no greater impact on maritime commerce than if it had occurred while the derrick was being erected [on land.] [The plaintiffs] were land-based rig builders engaged in building an oil derrick on an incomplete jack-up barge. Neither derrick building nor ship construction has traditionally been considered a maritime business.
>
> . . . .
>
> The barge was not complete or in navigation when the accident occurred, and the accident neither caused harm to the barge nor can be said specifically attributed to the location of the derrick on a vessel.
>
> . . . .
>
> Neither the vehicle nor the instrumentalities involved, therefore, raise considerations creating a significant nexus to traditional maritime activities.
>
> . . . .
>
> Every factor identified as a cause of the accident might have occurred as easily on land, and the injuries the parties suffered are indistinguishable from those arising out of similar land-based mishaps.

826 F.2d 1426–27.

The defendants also cite *Watson v. Massman Construction Co.*, 850 F.2d 219 (5th Cir.1988), which is strikingly similar to the present case, to support its contention that there is no nexus between the accident and traditional maritime activity. In *Watson* a bridge construction worker fell to his death in the Mississippi river while assisting in the construction of piers for a river bridge. While agreeing that the plaintiff met the "locality" test, the Fifth Circuit concluded that the plaintiff failed to demonstrate that the accident had a substantial relationship to traditional maritime activities. The Fifth Circuit stated:

> [The plaintiff] was neither a near-pilot nor a seaman. He was a construction worker who fortuitously found himself employed on a construction site in the middle of the Mississippi River. While a work barge was involved, it was so only indirectly and in no way was the barge the cause of the injury. This was neither a collision case or one in which the movement of the barge played any part in the injuries.

850 F.2d at 222.

The plaintiff argues that this Court should follow the decision of the First Circuit Court of Appeals in *Shea v. Rev–Lyn Contracting Co., Inc.*, 868 F.2d 515 (1st Cir.1989). Like *Watson, Shea* involved an employee of a construction company which was working on a bridge. At the time of the accident the plaintiff was repairing a bridge that spanned a navigable waterway. Specifically, the plaintiff was on a crane that was attached to a barge when the accident occurred. The First Circuit reversed the district court's decision to grant summary judgment in favor of the defendant based upon the district court's determination that the plaintiff's injuries were not sufficiently related to traditional maritime activities.

The First Circuit relied upon the facts that the defendant utilized boats, barges, and other maritime instrumentalities. The Court also focused on the fact that the defendant specialized in the repair and maintenance of waterside structures such as bridges and docks. The First Circuit discounted the fact that the plaintiff's injuries could have as easily occurred on land, stating:

> [The plaintiff's] injury, caused by the improper use of the crane, could have happened in many different contexts, on land as well as at sea. [The plaintiff] did

not fall because of a uniquely maritime occurrence; for example, he was not thrown from the crane because of sudden movements caused by a wave or a navigational error, but that is not the applicable standard. It is relevant that [the plaintiff] was injured while on navigable waters. Just because an accident could conceivably have occurred on land does not take away the maritime nature of the accident when it does occur on navigable waters.

868 F.2d 518.

Having discussed the foundation for the inquiry into maritime jurisdiction, the Court will now address the specific facts of the present case.

### 1. The Functions and Roles of the Parties

The plaintiff was a drill operator employed by the defendant on a portable drill barge in navigable waters. The plaintiff was constructing a bridge that, when finished, would traverse the Cumberland River—a navigable waterway. The plaintiff's injury—a severing of his left arm—was sustained as the plaintiff was operating a track drill on the defendant's portable drill barge. The defendants are a construction company and the manufacturer of a drill. The defendant construction company was hired to build a road and concomitantly a bridge over navigable waters that intersected the proposed roadway.

### 2. The Types of Vehicles and Instrumentalities Involved

The only vehicle and instrumentality that is involved in the accident in this case is a portable drill barge. The portable drill barge on which the plaintiff was working at the time of the accident is not the type of craft traditionally considered to be a vessel. However, with the advent of special purpose crafts and the recognition by some courts that these crafts are vessels, the Court has determined that there are enough factual disputes concerning the nature of the portable drill barge that a jury

must decide whether it is a vessel. The portable drill barge was not damaged by the plaintiff's accident. The portable drill barge was not "in" navigation at the time of the accident.

### 3. The Causation and the Type of Injury

The plaintiff was injured by a drill. The exact cause of the injury is unknown. The plaintiff alleges that the drill was defective and that his employer did not provide him with a safe working environment. The plaintiff also alleges that the drill was an appurtenance to the barge and that the drilling work the plaintiff was doing on the barge was different from and much more difficult than drilling work performed on land.

The defendant alleges that accident occurred because of the plaintiff's own negligence. The defendant also alleges that because the drill was not affixed to the portable drill barge that the barge played no role in the accident and that the accident could easily have occurred in exactly the same manner on shore if the plaintiff had been operating the drill on land rather than water.

### 4. Traditional Concepts of the Role of Admiralty Law

A non-conventional craft and the wrong arising therefrom might be thought to bear a significant relationship to traditional maritime activity if that craft were performing a function traditionally performed by waterborne vessels. *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) (suggesting that an airplane flying from New York to London which crashed in the mid-Atlantic might bear a significant relationship to traditional maritime activity because ships traditionally carried passengers from New York to London.).

Ships, boats, and other conventional watercraft have traditionally been used for one function—the transportation of people or things across water[9]. Admiralty law

9. While watercraft may have historically been

used in the construction of bridges spanning

developed to deal with novel questions of law arising from the travel of vessels as they transported human beings and goods. The present case does not involve the transportation of either people or things.

Thus, as the Court more fully examines in the three sections below, federal maritime jurisdiction is lacking because the plaintiff has failed to demonstrate that his injury had a substantial relationship to maritime activity.

### a. *The Impact of the Event on Maritime Shipping and Commerce*

The plaintiff has produced no evidence, nor made any allegations that the plaintiff's accident in any way hampered or impeded the flow of maritime shipping or commerce. The Court finds it highly unlikely that this accident may have interrupted free access across the Cumberland River. The potential disruptive impact of an event upon navigable waters is an important factor in determining federal admiralty jurisdiction. *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). In the present case, this factor is negligible.

### b. *The Desirability of a Uniform National Rule to Apply to Such Matters*

Admiralty law has traditionally been concerned with uniform national navigational rules—rules that govern the manner and direction that vessels may rightly move upon the waters. *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). In the present case, a traditional tort case arising in negligence and products liability, there is no need for the application of a uniform national navigational rule. There are no claims or allegations in this case which implicate navigational rules. The pre-existing products liability laws and laws regarding negligence will more than

navigable water, this was a function secondary to their primary purpose of providing transpor-

suffice for a just adjudication of the plaintiff's claims.

### c. *The Need for Admiralty "Expertise" in the Trial and Decision of the Case.*

While many cases arising under general federal maritime jurisdiction require a specialized expertise in order to fully comprehend the issues at hand, the present case is not within this category. As explained above, the issues most closely connected to the present case are products liability and negligence. Both of these issues can be handled without reference to a specialized expertise in admiralty law.

Because there is no connection between the plaintiff's accident and traditional maritime activity, the Court DENIES the plaintiff's claim under federal maritime jurisdiction and DISMISSES the plaintiff's claims brought pursuant to federal maritime jurisdiction.

tation for people and things.