Stephen J. SHEA, Plaintiff, Appellant,

v.

REV–LYN CONTRACTING CO., INC., Defendant, Appellee.

No. 88–1622.

United States Court of Appeals, First Circuit.

Heard Oct. 6, 1988.

Decided Feb. 28, 1989.

David B. Kaplan with whom Thomas M. Bond and Law Offices of David B. Kaplan & Associates, Chelsea, Mass., were on brief, for plaintiff, appellant.

Astrid C. Glynn with whom Glynn & Dempsey, P.C., Boston, Mass., was on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, TIMBERS,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

TORRUELLA, Circuit Judge.

This case takes us into the murky waters demarcating the boundaries of admiralty jurisdiction in federal courts. Appellant, Stephen Shea, brought this action after having sustained injuries in the course of his employment on appellee's barge. He received compensation under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950 (1982), and then brought this suit claiming negligence under sec. 905(b) of that Act. The defendants below moved for and were granted summary judgment. Shea appeals from the district court's order granting this motion. We reverse.

I.

Shea was an employee of appellee, Rev–Lyn Contracting Company (Rev–Lyn), a construction company that specializes in the repair and construction of waterside structures. On January 5, 1983, Shea, while on a job for appellee, was repairing a draw bridge spanning the Chelsea Creek, a navigable waterway in Boston, Massachusetts. A Rev–Lyn owned barge was positioned in the water near the bridge and a crane was on the barge.

Appellant ascended the crane until he was able to climb onto the bridge. After unloading some materials or adjusting the

* Of the Second Circuit, sitting by designation.

materials already on the bridge,[1] Shea was instructed by his employer to step off the bridge onto the ball and hook at the end of the crane's boom. While "riding the ball" down, appellant was thrown from the ball onto the deck of the barge. The crane was operated at this time by another employee of Rev–Lyn.

■ Claims under 33 U.S.C. § 905 must be predicated on facts warranting the invocation of admiralty jurisdiction. *Drake v. Raymark Industries, Inc.*, 772 F.2d 1007 (1st Cir.1985), *cert. denied*, 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986); *Austin v. Unarco Industries, Inc.*, 705 F.2d 1 (1st Cir.), *cert. dismissed*, 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983). The district court, in granting summary judgment to Rev–Lyn, concluded that Shea's injuries were not sufficiently related to traditional maritime activities and thus there was no federal jurisdiction to hear the case.

## II.

■ The district court's conclusion was based on its application of law to the relevant facts, allowing for a plenary review at this stage. *United States v. LULAC*, 793 F.2d 636, 642 (5th Cir.1986); C. Wright & A. Miller, 9 *Federal Practice and Procedure: Civil* § 2589 (1971). As opposed to many factual findings required for determinations of personal jurisdiction, the existence *vel non* of subject matter jurisdiction is a question of law reviewable *de novo*. *Gerritsen v. De La Madrid Hurtado*, 819 F.2d 1511, 1515 (9th Cir.1987); *Peter Starr Prod. Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir.1986).

The law in this circuit, for determining if admiralty jurisdiction exists over torts, is clearly established. *See Carey v. Bahama Cruise Lines*, 864 F.2d 201 (1st Cir.1988); *Drake v. Raymark Industries, Inc.*, 772 F.2d 1007 (1st Cir.1985), *cert. denied*, 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986); *Austin v. Unarco Industries, Inc.*, 705 F.2d 1 (1st Cir.), *cert. dismissed*, 463

U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983). A two-part test must be satisfied. The first, the locality test, requires that the tort must have occurred on navigable waters.[2] *See The Plymouth*, 70 U.S. (3 Wall.) 20, 33, 18 L.Ed. 125 (1866); *The Propeller Genesee Chief v. Fitzhugh*, 53 U.S. (12 How.) 443, 454, 13 L.Ed. 1058 (1852). The locality test in this case is clearly satisfied, as appellant's injuries occurred on the deck of a vessel that was on navigable waters. Furthermore, the crane whose ball he was "riding," was also on that vessel, wherefore appellant technically fell from one part of the vessel to another part.

■ The second part of the test, the "nexus test," under which the tort must bear a significant relationship to traditional maritime activities, must also be satisfied. *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982); *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). Precise formulation of the nexus test has been a slow and difficult process. Although the Supreme Court has not yet clearly defined this requirement, this court, along with the majority of other circuits, considers the following factors to be relevant: 1) the functions and roles of the parties; 2) the types of vehicles and instrumentalities involved; 3) the causation and type of injury; and 4) traditional concepts of the role of admiralty law. *See Drake*, 772 F.2d at 1015; *see also Oman v. Johns–Manville Corp.*, 764 F.2d 224, 230 (4th Cir.) (en banc), *cert. denied*, 474 U.S. 970, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985); *Harville v. Johns–Manville Prods. Corp.*, 731 F.2d 775, 783 (11th Cir.1984); *Owens–Illinois, Inc. v. United States District Court*, 698 F.2d 967, 970 (9th Cir.1983); *Edynak v. Atlantic Shipping, Inc.*, 562 F.2d 215, 221 (3d Cir.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *St. Hilaire Moye v. Henderson*, 496 F.2d 973, 978 (8th Cir.), *cert. denied*, 419 U.S. 884, 95

---

**1.** These facts are in dispute but are not essential for a final determination of this case.

**2.** Further definition of the term "navigable waters" is unnecessary since it is not disputed by either party that the Chelsea Creek is a navigable waterway.

S.Ct. 151, 42 L.Ed.2d 125 (1974); *Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir.1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974).

Indeed, the United States Court of Appeals for the Fifth Circuit, which first promulgated this test in *Kelly*, recently has decided that courts should also consider "(1) the impact of the event on maritime shipping and commerce (2) the desirability of a uniform national rule to apply to such matters and (3) the need for admiralty 'expertise' in the trial and decision of the case." *Molett v. Penrod Drilling Co.*, 826 F.2d 1419, 1426 (5th Cir.1987). We agree with the application of these additional inquiries and find them to be a more precise enunciation of the examination specified by the fourth factor in the *Kelly* test.

### III.

■ Having thus laid the groundwork for our inquiry, we will now turn to the specific facts of this case.

Appellant was a maritime worker, employed by Rev–Lyn on numerous construction jobs. At the time of the accident,[3] he was repairing a bridge that spanned a navigable waterway and specifically was on a crane, attached to a barge, that was involved in the repair work. Although construction work is not inherently maritime, Shea's duties included loading, unloading, and pumping out barges and other vessels, and other tasks related to the maintenance of Rev–Lyn's vessels. These duties are all traditional functions of maritime employees. Also, the types of repairs performed by Rev–Lyn must generally be accomplished through the use of boats, their crews, and other maritime instrumentalities.

Although the first factor in *Kelly* calls for an inquiry of the roles and functions of all of the parties, the district court did not discuss the defendant's typical activities. Rev–Lyn is a construction company specializing in the maintenance and repair of waterside structures, such as bridges and docks. The company owns numerous boats and it appears that much of its work must be completed via a waterway.

The only vehicles and instrumentalities involved in this case were a barge and a crane. The barge is clearly a vessel used primarily in maritime commerce. Although cranes are used in all types of construction and are not inherently maritime, the crane in this case, because of its positioning, was truly an appurtenance of the barge. The crane was mounted on the barge, distinguishing this case from those cases in which an individual falls from a land based instrumentality onto a vessel.[4] Furthermore, devices for lifting cargo on and off ships have traditionally been common on ships, wherefore whether in the form of a crane or otherwise such devices are closely related to maritime commerce.

Shea's injury, caused by the improper use of the crane, could have happened in many different contexts, on land as well as at sea. Shea did not fall because of a uniquely maritime occurrence; for example, he was not thrown from the crane because of sudden movements caused by a wave or a navigational error, but that is not the applicable standard. It is relevant that Shea was injured while on navigable waters. Just because an accident could conceivably have occurred on land does not take away the maritime nature of the accident when it does occur on navigable waters.

---

**3.** We agree with the district court that it is important to examine, among other things, the tasks being performed at the time of the alleged tort. *Shea v. Rev–Lyn Contracting Co.*, No. 84–3700–S Civ. (D.Mass. June 2, 1988). Under the applicable jurisdictional test, the wrong itself must bear a significant relationship to traditional maritime activities and therefore the actions at the time of the wrong become very relevant, although certainly not determinative.

**4.** Although it is relevant to examine the location of the instrumentality causing the harm and that of the injury itself, these factors are certainly not determinative. *See Minnie v. Port Huron Terminal Co.*, 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631 (1935) (jurisdiction where longshoreman was struck by cargo hoist and landed upon wharf); *T. Smith & Son, Inc. v. Taylor*, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928) (no jurisdiction in case where longshoreman was knocked off wharf by cargo and landed in water).

Lastly, we must look at the relationship between jurisdiction in this case and "the traditional concepts of the role of admiralty law." Having already concluded that concerns for maritime commerce were at the heart of the original grant of jurisdiction, we follow other courts who have examined the impact that this accident has had on maritime commerce.[5] Although boats certainly do not need to be commercial in nature in order to invoke this jurisdiction, *see Foremost,* 457 U.S. at 677, 102 S.Ct. at 2659, the vessel in this case was clearly used solely for commercial purposes and was being so used at the time of the accident. The accident necessitated Rev–Lyn to stop work at this site for some time and, although the record does not so indicate, the accident conceivably may have interrupted free access along the creek.

Admiralty jurisdiction applies to cases arising in substantive areas in which it is deemed favorable to apply a uniform national rule, such as to matters of maritime navigation. In this case, a traditional tort case arising in negligence, no uniform law need be applied. Moreover, whereas many cases in this area arise due to technical complexities requiring a specialized expertise in order to fully understand the matters at hand, this case is not within this category.

It seems contrary to the underlying purposes of this jurisdictional grant to deny admiralty jurisdiction to a case such as this involving an accident caused by negligence on a commercial vessel. Indeed, other circuits have upheld jurisdiction in cases with very similar, although not completely analogous, facts. *See, e.g., Edynak v. Atlantic Shipping, Inc.,* 562 F.2d 215 (3d Cir.1977) (worker signalling crane on vessel was injured due to negligent operation of crane), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). Weighing carefully all of this information, we feel that the lower court erred in concluding that admiralty jurisdiction does not exist in this case. Although not all of the factors favor jurisdiction in this case, the balance points

to a substantial relationship between this tort and traditional maritime activities.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS DECISION.

---

**5.** In *Foremost,* for example, the Court determined that a crash between two small pleasure boats at the mouth of the St. Lawrence Seaway

would have a *"substantial* effect on maritime commerce." 457 U.S. at 675, 102 S.Ct. at 2658 (emphasis supplied).