James O'BOYLE, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee,

Frank Orth & Associates, Defendant.

No. 92–4032.

United States Court of Appeals, Eleventh Circuit.

June 11, 1993.

Edward R. Fink, Ruf & Carksy, P.A., Ft. Lauderdale, FL, for plaintiff-appellant.

David V. Hutchinson, U.S. Dept. of Justice, Admiralty Div., Washington, DC, for defendant-appellee.

Before ANDERSON and EDMONDSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

O'Boyle appeals the dismissal of his amended complaint against the United States for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(1) and (6). In his amended complaint, he alleged that he was injured as a result of his slip and fall on a Japanese fishing vessel. He sought relief under the Jones Act, 46 U.S.C.App. § 688 and the Federal Employees Compensation Act, 5 U.S.C. §§ 8101–8193 (FECA), and made claims for maintenance and cure, wages and travel expenses, negligence and emotional distress. We conclude that O'Boyle was not a seaman, and affirm.

The amended complaint alleged that O'Boyle was aboard the HAURYO–MARU–53, a Japanese driftnet vessel plying the international waters of the Pacific Ocean when fish slime was left on the deck causing him to slip and fall and injure himself. The complaint alleged that the Driftnet Impact Monitoring, Assessment and Control Act of 1987, P.L. 100–220, 101 Stat. 1477, note to 16 U.S.C. § 1822, and the Shima–Asselin Treaty provide for the placement of American observers on Japanese driftnet fishing vessels in international waters.

The complaint further alleged that the Secretary of Commerce through the National Oceanic & Atmospheric Administration contracted with Frank Orth & Associates to provide scientific observers to conduct research and compile data concerning driftnet fishing. Pursuant to its contract with the government, Orth recruited O'Boyle, a field biologist and Grade 2 Observer, who had responded to an offer of employment by Orth in the Miami Herald newspaper. O'Boyle signed a contract with Orth as a special project employee. Orth had administrative and logistic responsibility over O'Boyle, issued him his pay check and provided him with work-related health and accident, workmen's compensation and Jones Act insurance. Following his injury, Orth paid O'Boyle maintenance and cure benefits.

The amended complaint sought recovery as a borrowed servant employee of the Unit-

ed States under the Jones Act, the general Maritime law, or as an employee under FECA.

While this appeal was pending O'Boyle's claim for benefits under FECA was disallowed on the ground that he was not an employee of the United States under Section 8101(1)(A), (B) of the Act. FECA's action is not reviewable on appeal.

■■■ O'Boyle argues that he is not a United States' employee for purposes of FECA, but under the borrowed servant doctrine, a United States' employee under the Jones Act. We need not tarry long with this argument because even if he was an employee of the United States under the borrowed servant doctrine, which we need not decide, it is clear that in order to recover damages under the Jones Act, he must have the status of a seaman. *Hurst v. Pilings & Structures, Inc.*, 896 F.2d 504, 505 (11th Cir.1990). O'Boyle's sole argument that he was a seaman was, even though the owner and the crew did not want him aboard, once he was assigned to the vessel, it could not go fishing for squid without him, thus he was essential to the vessel's mission.

O'Boyle was not a member of the crew, was not involved with the navigation of the vessel, was not paid by the vessel, had no responsibilities or allegiance owing to the owner or operator of the vessel, was not performing the ship's work nor furthering its purpose. There was no means of communication between O'Boyle and the Master and crew of the vessel. O'Boyle could not speak Japanese and the Captain and crew spoke no English. He was aboard the HAURYO-MARU–53 solely because the treaty required him to be there in order to observe the types of marine life encountered by the ship during its voyage. He collected data and conducted scientific studies. O'Boyle's mission was not to catch fish or to have anything to do with the vessel. He was simply an employee of Orth, aboard a Japanese fishing vessel as a business invitee. His amended complaint set forth his duties as follows:

1. Maintain organized, accurate, up-to-date records for all information data and specimens collected;

2. Carry out research objectives efficiently, but tactfully to maintain good rapport with fishing industry representatives and officers and crew on board;

3. Collect biological specimens of fish, squid, seabirds and marine mammals including dissection of porpoises for biological samples and necropsy data;

4. Monitor gillnet set/haul operations and record observations/data concerning the incidental entanglements of marine mammals, salmon and seabirds and other marine organisms as required;

5. While the vessel is underway, conduct sighting surveys for marine mammals and debris; and

6. Conduct ancillary scientific studies as required; e.g., CTD Casts, seabird sighting surveys, neuston tows, and ichthyoplankton sampling.

Upon the completion of the voyage, O'Boyle submitted a detailed report of his scientific observations to the National Oceanic & Atmospheric Administration, not to the vessel owner or operator.

In *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991), the court emphasized that "[t]he key to seaman's status is employment-related connection to a vessel in navigation ... a necessary element of the connection is that a seaman perform the work of the vessel". The Court cited approvingly that part of the Fifth Circuit's test which requires that a seaman's duties "contribut[e] to the function of the vessel or to the accomplishment of its mission." *Id.* (quoting *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir.1959)).

This court in *Hurst v. Pilings & Structures, Inc., supra*, set forth the qualifications for seaman status as follows:

To qualify for seaman status, a worker must satisfy the following criteria:

(1) he must have a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or dur-

ing anchorage for its future trips. *Guidry v. South Louisiana Contractors, Inc.,* 614 F.2d 447, 452 (5th Cir.1980).

Under any theory of liability that O'Boyle alleged in his amended complaint, he cannot recover because he was not a seaman. The motion to dismiss his complaint was properly granted.

AFFIRMED.

ANDERSON, Circuit Judge, concurring:

O'Boyle contends that he was a seaman because his presence on the HAURYO–MARU–53 was essential to the accomplishment of its mission, in the sense that the vessel could not legally perform its function without carrying him aboard. Although I find some merit in O'Boyle's argument, and although it cannot be said that O'Boyle's position is clearly incorrect in light of the paucity of relevant authority, I conclude that Judge Dyer's reasoning is more persuasive. Aside from the fact that his presence on the vessel was legally required, O'Boyle did not contribute to the vessel's function in any way. Accordingly, I concur.