Steve V.B. **KELLER**

v.

**UNITED STATES of America.**

**Civ. No. 81–549–SD.**

United States District Court,
D. New Hampshire.

Dec. 30, 1993.

**326**

David S. Brown, Sheehan, Phinney, Bass & Green, P.A., Portsmouth, NH, Michael J. Donahue, Donahue, McCaffrey, Tucker & Ciandella, Exeter, NH, Douglas S. Carr, Perkins, Thompson, Hinckley & Keddy, Portland, ME, for plaintiff Steve V.B. Keller.

Jeffrey R. Howard, Attorney General, Gretchen Leah Witt, U.S. Attorney's Office, Concord, NH, for U.S.

## OPINION AND ORDER

DEVINE, Senior District Judge.

On November 5, 1979, the plaintiff, Steve V.B. Keller, sustained personal injuries when he fell from a ship's ladder. At the time, plaintiff was employed by Simplex Wire & Cable Company (Simplex) as a temporary marine cable loader. His work assignment was to load cable aboard the S.S. *Arthur Huddell* (the *Huddell*).

Invoking maritime law, Keller sought recovery under the Jones Act, 46 U.S.C.App. § 688 and/or pursuant to the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901, 950. This Opinion and Order addresses the relevant factual and legal issues raised in the course of the bench trial of the plaintiff's claims.

### 1. Background

Simplex manufactures cable at its plant in Newington, New Hampshire. In late October 1979, Simplex hired Keller. His initial assignment was to load cable aboard the USS *Aeoleus*. He worked there several evenings, and on other evenings he worked ashore in a Simplex warehouse.

Simplex had contracted to furnish underwater marine cable to the Navy Electronic Systems Command (NAVELEX). A quantity of this cable was to be loaded, at varying periods of time, aboard the *Huddell*. Constructed as a "Liberty Ship", the *Huddell* had subsequently been converted to a barge designed for the loading of cable.[1]

As the *Huddell* lacked operational navigational power, it was towed to the riverside facility of Simplex. It remained at Simplex for the next two years for the cable loading operations.[2] Tugboats and pilots of Portsmouth Pilots and Portsmouth Navigation shuttled the *Huddell* between the Simplex pier and its river mooring.

On occasions when the *Huddell* moved either to its mooring or along the Simplex pier, its lines were handled by those of the Simplex employees then on duty. Such movements took place only in daylight hours, and the plaintiff was never involved in them.

The accident occurred in tank no. 4 of the *Huddell*. This tank was cylindrical in form and centered by a large core around which the cable was to be wrapped.

Ingress and egress to tank no. 4 was by means of a ship's ladder. At the top of the tank, or tween deck, there were two safety rails designed to prevent inadvertent falls from the tween deck to the metal floor of the tank.[3]

When Simplex cable was to be loaded, it trailed over a long trough which ran from the Simplex plant to the pier below. Through this trough water flowed, ostensibly for the purpose of keeping the cable clean. The cable storage tank was often wet and cold, as there was no heat on the *Huddell*. Cable loaders wore clothing and footwear designed to accommodate these conditions.

Keller was a part-time student at the University of New Hampshire (UNH). On the evening of November 4, 1979, he went to the

---

**1.** Mothballed in California, the *Huddell* was towed to Bayonne, New Jersey, for extensive repairs. From Bayonne, its next stop was the Simplex plant.

**2.** While the *Huddell* was at Simplex, the Navy had no crew or other representative aboard her. Simplex employees carried out such work details

as were necessary, including the making of minor repairs.

**3.** These safety rails had been installed in the course of the repairs made to the *Huddell* in Bayonne.

UNH Student Union with his roommate, Arthur Dennison. While there, he and Dennison consumed several 40–ounce pitchers of beer in the company of two female students, with whom they danced.

At approximately 11:20 p.m. plaintiff went to a public telephone to make a long-distance call. At 11:30 p.m., he drove Dennison and himself in plaintiff's motor vehicle to the Simplex plant.

On arrival at Simplex, Keller changed into his work clothes. His work group was then instructed to proceed to the pier to go aboard the *Huddell.* Amnesiac as to the actual events of the accident, plaintiff's last clear memory is of proceeding through a door toward the hold.

From the bottom of tank no. 4 of the *Huddell* to the tween deck is a distance of 16 feet. The lower of the two safety rails at the top of the ladder was 27 inches above the tween deck. The higher of the two rails was 60 inches above the tween deck.[4]

The ten to twelve members of the midnight cable loading crew entered tank no. 4 by descending the ladder without reported difficulty. They then commenced and continued the cable loading operation until their scheduled coffee break approached at 1:45 a.m. on November 5.

Ray Tweedie, Sr., was the assistant foreman in charge of the cable loading operation. The tank of the *Huddell* was empty when loading commenced on the morning of November 5. Tweedie was the first of the group to ascend the ladder at approximately 1:45 a.m.

When he reached the tween deck, Tweedie moved to a position some ten feet from the top of the ladder.[5] His purpose in taking this position was to allow others to exit and to make certain that all employees had exited from tank no. 4.

After two or three employees had come out onto the tween deck, Tweedie heard a remark that someone had fallen from the ladder. He went immediately to the top of the ladder and observed Keller lying on the cable which had been loaded prior to the break.

Tweedie directed another employee to summon an ambulance and to notify the foreman, Steve Burch. He then descended the ladder to assist the plaintiff. He cleared Keller's tongue from his throat.

Burch arrived, descended the ladder to the tank, and administered mouth-to-mouth resuscitation. While assisting Keller, he noted a strong odor of alcohol emanating from his person.

The ambulance subsequently arrived, and Keller was removed to the Portsmouth, New Hampshire, Hospital. A blood test taken there ultimately resulted in a laboratory finding of Blood Alcohol Content (BAC) of .14.

Further relevant facts will be subsequently addressed in the course of this Opinion and Order.

## 2. Discussion

### a. The Applicability of the Jones Act

In pertinent part, the Jones Act provides:

> Any *seaman* who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law.... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C.App. § 688 (emphasis supplied).

Accordingly, one who seeks to recover damages under the Jones Act must have the status of a seaman. *O'Boyle v. United States,* 993 F.2d 211, 213 (11th Cir.1993). Undefined in the Jones Act, the "inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it." *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991). At a minimum, the employment duties of the claimant must contribute to the

---

4. The measurements are taken from Defendant's Exhibit C, which consists of the measurements made by the defendant's expert Jan Bijhouwer.

5. From this position, Tweedie could not see other Simplex employees as they came up the ladder.

function of the vessel or the accomplishment of its mission. *Id.* at 355, 111 S.Ct. at 817.

■ Otherwise stated, to qualify for seaman status, a worker (1) must have a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission, or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips. *O'Boyle, supra,* 993 F.2d at 213–14.

However, "if a barge, or other float's 'purpose or primary business is *not* navigation or commerce' then workers assigned thereto for its shore enterprise are to be considered seamen only when it is in actual navigation or transit." *DiGiovanni v. Traylor Bros. Inc.,* 959 F.2d 1119, 1123 (1st Cir.) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992).

■ The record here is that the *Huddell* was moved by tug about the pier and the moorings for "working convenience." *Id.* at 1124. Keller participated in none of these operations, but even had he "occasionally adjusted lines for pier movement and the rise and fall of the tide," he would not have been exposed to the risks of a voyage. *Id.* He was not permanently assigned to the *Huddell,* as he had worked in the Simplex plant itself as well as aboard another cable ship, the *Aeoleus.*[6]

Fairly viewed, the court finds and rules that the record before it does not permit a finding that Keller enjoyed the status of a seaman while employed aboard the *Huddell.* Accordingly, he may not seek recovery pursuant to the provisions of the Jones Act, 46 U.S.C.App. § 688.

#### b. Applicability of The LHWCA

LHWCA "is one of a pair of mutually exclusive statutes that distinguish between land-based and sea-based maritime employees." *McDermott Int'l, Inc., supra,* 498 U.S.

at 353, 111 S.Ct. at 816. In pertinent part, section 5(b) of LHWCA provides:

> In the event of an injury to a person covered under this Act caused by the negligence of a vessel, then such person ... may bring an action against such vessel as a third party in accordance with the provisions of section 33 of this Act.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this Act.

33 U.S.C. § 905(b).

■ Claims brought under LHWCA must be predicated on facts which warrant the invocation of admiralty jurisdiction. *Shea v. Rev–Lyn Contracting Co., Inc.,* 868 F.2d 515, 517 (1st Cir.1989). Admiralty jurisdiction exists if the tort at issue (1) occurred on navigable waters and (2) bore a significant relation to traditional maritime activities. *Id.; Butler v. American Trawler Co., Inc.,* 887 F.2d 20, 21 (1st Cir.1989).

■ The plaintiff's fall here occurred on navigable waters, and at the time he was engaged in the loading of marine cable, a traditional maritime activity. The court finds and rules that the plaintiff is entitled to seek recovery for alleged negligence of the defendant pursuant to LHWCA.

#### c. The Merits of the Case

The general duty owed by a ship owner to a stevedore and his longshoreman employees is that of exercising due care "under the circumstances." *Marine Terminals v. Burnside Shipping Co.,* 394 U.S. 404, 415, 89 S.Ct. 1144, 1150, 22 L.Ed.2d 371 (1969).

This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operational navigational power.

---

**6.** In contrast to the *Huddell,* the *Aeoleus* was a fully crewed and manned cable ship with opera-

ations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. The shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman. Petitioner concedes as much. It is also accepted that the vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation.

*Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 166–67, 101 S.Ct. 1614, 1622, 68 L.Ed.2d 1 (1981).

■ Generally speaking, however, there is no duty imposed on the ship owner to supervise or inspect the cargo operations that are assigned to the stevedore. *Id.* at 172, 101 S.Ct. at 1624–25.

Unfortunately, no one present aboard the *Huddell* on the early morning of November 5, 1979, actually observed the cause of the plaintiff's fall. Rhonda Rose Rossley, who was next below Keller on the ladder, saw him attempt to put his right leg over the top safety rail. At that time, his left leg was on either the top or the second rung of the ladder, and his left hand was on the bottom of the safety rails. Plaintiff's Exhibit 43B, at 29. Plaintiff then "did a 360. He just turned and he fell and he hit the bottom of the tank." *Id.* at 30.

Based on such observation, and over objection, Rossley testified that, in her opinion, Keller struck his head on one of the safety rails, and this, in turn, was causative of his fall. Plaintiff's Exhibit 43B, at 32–33. Plaintiff suggests that this opinion is admissible and probative pursuant to Rule 701, Fed. R.Evid.

Rule 701, Fed.R.Evid., provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

■ For opinion testimony of a layman to be admissible, three elements must be present: (1) the witness must have personal knowledge of the facts from which the opinion is to be derived; (2) there must be a rational connection between the opinion and the facts upon which it is based; (3) the opinion must be helpful in understanding the testimony or determining a fact in issue. *Swajian v. General Motors Corp.,* 916 F.2d 31, 36 (1st Cir.1990).

■ Rossley did not see plaintiff strike his head, nor could she see his right hand before he fell. She did not observe whether his left hand or his left foot first lost contact with, respectively, the railing or the ladder rung. In light of these circumstances, the court finds and rules that her lay opinion does not qualify for admissibility under Rule 701, Fed. R.Evid.

■ Central to the issue of legal fault in this litigation is whether the ladder at issue was causally defective. Plaintiff produced the expert testimony of Gerrit J. van Dissel, a naval architect and marine engineer. Defendant countered with the testimony of Jan Bijhouwer, an equally well qualified expert.

Unsurprisingly, van Dissel, who had viewed, climbed, and measured the *Huddell* ladder, opined that it failed to comply with what he perceived to be the safety standards which applied as of the time of the accident. Bijhouwer, who had also viewed, climbed, and measured the ladder, opined that stan-

dards other than those relied on by van Dissel were generally complied with and that the ladder in question was generally safe.

On careful review of this conflicting testimony, the court finds and rules that the testimony of Mr. Bijhouwer is more persuasive and that, whatever deviations of the ladder's construction might have been from applicable safety standards, they were not causative of the plaintiff's accident. Some ten to twelve cable loaders, including Keller, safely descended the ladder to commence work shortly after midnight on November 4–5, 1979. Some two or three of these employees safely ascended the ladder prior to the accident. Immediately after the accident, both Tweedie and Burch again safely descended the ladder.

The work of the cable loaders was such that they were required to descend and ascend the ladder. Observation of any hazard at the top of the ladder on descent required each Simplex employee to anticipate that such hazard might well be there when he ascended the ladder. Even momentary forgetfulness would not erase the notice given by the presence of any such hazard. *Ludwig v. Pan Ocean Shipping Co., Ltd.*, 941 F.2d 849, 851 (9th Cir.1991).

Aware that the general abrogation of the ship owner's duty to supervise and inspect cargo operations may be modified by "custom", *Scindia, supra,* 451 U.S. at 172, 101 S.Ct. at 1624–25, plaintiff made much of the fact that the *Huddell* had no Navy representatives aboard during such loading operations. It bolstered this argument by testimony of van Dissel that in his experience almost invariably a representative of the ship owner was present during cargo operations.[7]

■ But a custom-generated duty to supervise and inspect does not transfer to the ship owner a duty to eradicate dangers rea-

sonably known to and managed by the stevedore. *LaMartina v. Pan Ocean Shipping Co., Ltd.*, 815 F.Supp. 878, 880–81 (D.Md. 1992); *see also Williams v. M/V Sonora,* 985 F.2d 808 (5th Cir.1993).

■ Viewed as a whole, the court finds and rules that plaintiff has failed to sustain his burden of proving by a preponderance of the evidence that any negligence on the part of the defendant ship owner was causative of his accident and resultant injuries. A significant factor in the case is plaintiff's intoxication on the evening of the accident. The defendant's expert forensic chemist, Patrick Demers, estimated that an average male with a .14 BAC at 3 a.m., who had completed drinking at 11:30 p.m. of the previous evening, would have had a BAC of approximately .16 at 2 a.m. At the time of this accident, the motor vehicle laws of New Hampshire established that a BAC level of .10 was prima facie evidence of intoxication. *See* former New Hampshire Revised Statutes Annotated (RSA) 262–A:63.[8]

The court makes the foregoing observations merely to point out that conditions other than those for which the defendant ship owner was responsible may well have contributed to the accident. The court is, of course, aware that were negligence found on the part of the ship owner, the intoxication of Keller, under the "pure" comparative fault doctrine, would not serve necessarily to totally disqualify him from recovery.

Whatever, if any, other causes contributed to the plaintiff's accident, the preponderance of the evidence does not support the claim that causative negligence existed on the part of the defendant. Accordingly, the plaintiff is not here entitled to recovery.

### 3. Conclusion

The foregoing shall comprise the findings of fact and rulings of law mandated by Rule

---

**7.** The defendant objected to and moved to strike this line of testimony, claiming "surprise" because it had not been revealed in van Dissell's written expert's disclosure. The court denied the motion to strike and, in light of the findings and rulings herein made, finds it unnecessary to revisit the issue.

**8.** Plaintiff makes much of the fact that neither Tweedie, Rossley, nor another employee, Ter-

rance Shannahan, observed any obvious signs of his intoxication while he was aboard the *Huddell* on the early morning of November 5, 1979. Nevertheless, following the accident, Burch checked all remaining members of the cable loading group and sent another member home because, in his opinion, that employee was intoxicated.

52(a), Fed.R.Civ.P. Any requests for findings of fact and rulings of law which are not hereinabove inferentially granted are herewith denied.

The court in the course of rendering its Opinion and Order has reviewed all of the exhibits and has stricken identification from Plaintiff's Exhibits 2, 3, 30, 31, 37, 39, 40, 41, 42, 43A, 43B, 46, 47, 48, 54, 55, and 56.

The clerk is directed to enter judgment in behalf of the defendant.

SO ORDERED.

